David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*JEFF M. BENITES*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JEFF M. BENITES, | : Civil Action No.: |
| Plaintiff, | : |
| v. | : **COMPLAINT FOR DAMAGES** |
| | : **PURSUANT TO THE FAIR** |
| BANK OF AMERICA, N.A.; JP | : **CREDIT REPORTING ACT, 15** |
| MORGAN CHASE BANK, N.A.; | : **U.S.C. § 1681, ET SEQ.** |
| NEVADA STATE BANK; EQUIFAX | : |
| INFORMATION SERVICES, LLC, | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

### INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit

Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. JEFF M. BENITES ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of BANK OF AMERICA, N.A. ("BOA"), JP MORGAN CHASE BANK, N.A. ("CHASE"), NEVADA STATE BANK

("NSB"), and  EQUIFAX INFORMATION SERVICES, LLC ("Equifax") (or jointly as "Defendants") with regard to erroneously reporting derogatory credit information to national reporting agencies.

4. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

6. This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

7. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Equifax has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

///

## PARTIES

8.  Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9.  Defendant BOA is a corporation doing business in the State of Nevada.

10. Defendant BOA is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

11. Defendant CHASE is a corporation doing business in the State of Nevada.

12. Defendant CHASE is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

13. Defendant NSB is a corporation doing business in the State of Nevada.

14. Defendant NSB is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

15. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax

is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

16. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## GENERAL ALLEGATIONS

17. On or about 9/30/2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 11-25465-led (the "Chapter 13" or "Bankruptcy").

18. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

19. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

20. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

21. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

22. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on 4/28/2015.

23. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

24. However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

25. Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on Defendant's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

26. The adverse information reported by Defendants was based on each Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure

set forth in the Plaintiff's Chapter 13 Plan.  Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

27. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

28. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

29. Courts rely on such guidance to determine furnisher liability.  *See e.g.* *In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

30. On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

31. On information and belief, each furnisher-Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the

Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

32. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

33. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id.*, with the following relevant exceptions:

    a. <u>Current Balance</u>

        i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id.*

        ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id.* at 6-22.

iii. And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id.*

b. <u>Scheduled Monthly Payment Amount:</u>

i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id.* at 6-21.

ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id.* at 6-22.

iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id.*

34. Despite Metro 2 Format's instructions, each furnisher-Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

35. To this end, the adverse reporting on the Plaintiff's report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

36. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

## THE EQUIFAX VIOLATIONS

### BOA Misreported Credit Information

### RE: Account No. 5847

37. In an Equifax credit report dated September 8, 2015, BOA inaccurately reported that the Plaintiff still owed an outstanding balance of $13,143 even though BOA's debt was discharged in the Bankruptcy. It was therefore inaccurate for BOA to report a balance any greater than $0.

38. BOA also inaccurately reported that the Plaintiff was "past due" in the amount of $1,686. Since Plaintiff discharged BOA's debt, there was a $0 balance due at the time BOA reported the past due balance. Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

39. BOA also reported past due balances from December 2014 through August 2015. This was inaccurate, since the Plaintiff performed all obligations owed to BOA after filing Chapter 13 and obtained a discharge. Moreover, BOA was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for BOA to report balances "past due" after the Chapter 13

filing, since the Plaintiff fully performed all obligations owed to BOA after filing the Chapter 13.

40. BOA also reported that the Plaintiff was 30-59 days past due in December 2014, 60-89 days past due in January 2015, 90-119 days past due in February 2015, 120-149 days past due in March 2015, 150-179 days past due in April 2015, and 180 or more days past due in May 2015. This was inaccurate, since the Plaintiff performed all obligations owed to BOA after filing Chapter 13 and obtained a discharge. Moreover, BOA was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for BOA to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to BOA after filing the Chapter 13.

41. Further, BOA inaccurately reported that the Plaintiff's "Date of 1st Delinquency" and "Date Major Delinquency 1st Reported" (hereinafter "DLAs") were December 2012 and June 2015 respectively, when the Plaintiff filed Bankruptcy on 9/30/2011. The DLA dates should have been no later than the Bankruptcy filing date. By reporting DLAs later than the Bankruptcy filing date BOA caused the DLAs to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). BOA's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

42. BOA also reported that it "charged off" the account on multiple occasions from June 2015 to July 2015.  This was inaccurate, since BOA could only report it charged off the account once.

43. BOA also reported an account "status" of "Charge Off".  This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge.  Moreover, BOA was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for BOA to report that the Plaintiff's was "Charge Off" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to BOA after filing the Chapter 13.

44. On or about October 22, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed BOA's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by BOA.

45. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

46. Upon receiving the Equifax Dispute Letter, Equifax timely notified BOA of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

47. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

48. On or about November 19, 2015, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 5313038591) that BOA and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6).

49. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

50. BOA and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

51. BOA and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i.

52. BOA and Equifax re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, BOA and Equifax still inaccurately reported that the Plaintiff's DLAs were December 2012 and June 2015 respectively, when the Plaintiff filed Bankruptcy on 9/30/2011.

53. BOA and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i.

54. Due to BOA's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i.

55. Plaintiff's continued efforts to correct BOA's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with BOA and Equifax were fruitless.

56. BOA's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

57. Also as a result of BOA's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

58. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, BOA and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and § 1681i.

## CHASE Misreported Credit Information

## RE: Account No. 6032

59. In an Equifax credit report dated September 8, 2015, CHASE inaccurately reported that the Plaintiff still owed an outstanding balance of $86,300 even though CHASE's debt was discharged in the Bankruptcy. It was therefore inaccurate for CHASE to report a balance any greater than $0.

60. CHASE also inaccurately reported that the Plaintiff was "past due" in the amount of $214,482. Since Plaintiff discharged CHASE's debt, there was a $0 balance due at the time CHASE reported the past due balance. Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

61. CHASE also reported a past due balance in October 2014. Since Plaintiff discharged CHASE's debt, there was a $0 balance due any time after the discharge date and reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

62. On or about October 22, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed CHASE's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by CHASE.

63. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

64. Upon receiving the Equifax Dispute Letter, Equifax timely notified CHASE of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

65. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

66. On or about November 19, 2015, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 5313038591) that CHASE and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6).

67. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

68. CHASE and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

69. CHASE and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i.

70. CHASE and Equifax reported inaccurate derogatory information on Plaintiff's report.   Specifically, CHASE and Equifax now inaccurately reported that there was a "scheduled payment amount" of $360, even though Plaintiff was discharged on 4/28/2015 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due

71. CHASE and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i.

72. Due to CHASE's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681-2(b)(1)(E) and § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i.

73. Plaintiff's continued efforts to correct CHASE's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with CHASE and Equifax were fruitless.

74. CHASE's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

75. Also as a result of CHASE's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

76. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, CHASE and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and § 1681i.

## NSB Misreported Credit Information

## RE: Account No. 0400

77. In an Equifax credit report dated September 8, 2015, NSB inaccurately reported that there was an "actual payment amount" of $104, even though Plaintiff was discharged on 4/28/2015 and no payments were made or due on

this account creating the misleading and false impression that a debt was still owed and due.

78. NSB also inaccurately reported that there was a "scheduled payment amount" of $104, even though Plaintiff was discharged on 4/28/2015 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

79. Further, NSB inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was November 2011, when the Plaintiff filed Bankruptcy on 9/30/2011.  The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date NSB caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a).  NSB's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

80. On or about October 22, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed NSB's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by NSB.

81. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

82. Upon receiving the Equifax Dispute Letter, Equifax timely notified NSB of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

83. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

84. On or about November 19, 2015, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 5313038591) that NSB and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6).

85. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

86. NSB and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

87. NSB and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i.

88. NSB and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, NSB and Equifax still inaccurately reported that there was an "actual payment amount" of $104, even though Plaintiff was discharged on 4/28/2015. NSB and Equifax also still inaccurately reported that there was a "scheduled payment amount" of $104, even though Plaintiff was discharged on 4/28/2015. Also, NSB and Equifax still inaccurately reported that the Plaintiff's DLA was November 2011, when the Plaintiff filed Bankruptcy on 9/30/2011.

89. NSB and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i.

90. Due to NSB's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i.

91. Plaintiff's continued efforts to correct NSB's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with NSB and Equifax were fruitless.

92. NSB's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

93. Also as a result of NSB's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

94. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, NSB and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and § 1681i.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

95. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

96. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

97. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

98. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

### TRIAL BY JURY

99. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 30, 2017

Respectfully submitted,

By  /s/ David H. Krieger, Esq.

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*JEFF M. BENITES*